**In the Matter of James A. SAUER, Debtor.**

**Bankruptcy No. BK90–80898.**

United States Bankruptcy Court, D. Nebraska.

Nov. 21, 1995.

Marion F. Pruss, Omaha, NE, for debtor.

David L. Crawford, Omaha, NE, for William and Janette Stock.

Raymond R. Aranza, Omaha, NE, for Unsecured Creditors Committee.

Susan Knight, Assistant United States Attorney, Lincoln, NE, for United States of America/Department of Internal Revenue Service.

Sam King, United States Trustee.

### MEMORANDUM

JOHN C. MINAHAN, Jr., Bankruptcy Judge.

Counsel for the debtor in possession, Ms. Marion Pruss, purchased debtor's personal residence after a secured creditor obtained relief from the automatic stay and foreclosed. Before the court is the Motion for Authorization to Permit Ms. Pruss to Enter Into Trust Agreement and for Authority to Continue as Attorney for Debtor in Possession filed by James A. Sauer, individually, and Marion Pruss; Objections have been filed by the United States Trustee, Unsecured Creditors Committee and creditors William and Janette Stock. Also before the court is its Order of July 5, 1995, regarding the continued retention of Marion Pruss as attorney for debtor in this case. Both motions are denied. The court finds Ms. Pruss appears to have violated the Nebraska Code of Professional Responsibility, has obtained a financial interest adverse to her clients and that she no longer qualifies as a disinterested person under section 327. Ms. Pruss is therefore disqualified from further representation of the debtors in possession in this case and the companion J.A.S. Enterprises, Inc., Chapter 11 case.

### FACTS

Marion Pruss ("Pruss") was retained with court approval to represent Chapter 11 debtors in possession, James A. Sauer and J.A.S. Enterprises, Inc. (hereafter "debtor" or "debtors"). J.A.S. Enterprises, Inc. is owned by James Sauer and is a debtor in a separate Chapter 11 case. Pruss has also represented James Sauer in his individual capacity. The events which gave rise to this proceeding occurred during the course of Pruss's representation of both debtors and concern Pruss's purchase of former property of this bankruptcy estate.

Pruss was appointed as counsel for the debtor shortly after this Chapter 11 case was filed in 1990. In April, 1993, during a period in which Pruss was experiencing a serious medical condition, Household Bank, F.S.B. ("Household") filed a Motion for Relief from the Automatic Stay with respect to a trust deed it held in the debtor's residence. Pruss

filed a timely resistance on behalf of the debtor, alleging that the debtor was prepared to resume payments on the trust deed note. Pruss appeared at the April 20, 1993, hearing on the stay motion, and submitted into evidence the affidavit of Mr. James Sauer which stated that he was "prepared to resume normal, monthly debt service, including escrow for taxes and insurance in May, 1993." On that basis, the court denied the stay motion and ordered the debtor to resume making regular payments to Household beginning May 1, 1993.

On April 21, 1993, Household's attorney informed Pruss by letter of the payments required of the debtor in order to comply with the court's order. In her affidavit, Pruss states that she failed to convey this information to James Sauer. The debtor never commenced making the required monthly payments to Household and nine months later Household again sought relief from the automatic stay. In her affidavit, Pruss states that Mr. Sauer failed to make payments because she never forwarded the letter containing payment information to him. However, having signed an affidavit making an offer to resume making payments, Mr. Sauer was on notice of his undertaking.

On March 16, 1994, I granted Household relief from the stay because monthly payments had not been made as required by this court's prior order, despite the passage of more than nine months. Household then foreclosed its trust deed and became owner of the property after a trust deed sale. Pruss states in her affidavit that, "although Mr. Sauer expressly stated to me that he did not hold me responsible for the loss of the premises," she felt responsible, and felt a duty to "preserve the premises for Mr. Sauer's benefit". Pruss states in her affidavit that throughout the trust deed foreclosure proceedings she made numerous offers on behalf of Mr. Sauer to reinstate the loan or for him to purchase the premises and that Household rejected all of Mr. Sauer's offers. It is thus clear that Pruss represented Mr. Sauer in his individual capacity in connection with his dealings with Household and specifically respecting his attempt to purchase the home in his individual capacity.

In February, 1995, after it became apparent Mr. Sauer would not be able to purchase the residence from Household directly, and during the pendency of proceedings to evict Mr. Sauer from the residence, Pruss purchased the home herself with the "intention and preference to hold the house for the benefit of Mr. Sauer." Pruss states that it is her assumption that Mr. Sauer "will ultimately be in a position to repurchase the house and will wish to do so; however, he is under no legal or moral obligation to do so." The closing documents indicate that the residence was sold to Pruss personally, with no indication of a trust arrangement. The warranty deed names Pruss as grantee. James Sauer is in possession of the residence and has continuously resided there throughout these proceedings.

Pruss states that she has not entered into a written agreement of any kind with Mr. Sauer regarding the real estate. Pruss states that she may find it necessary to recover all or a portion of the funds "invested" by her in the real estate prior to April 15, 1996, in order to pay her income tax obligation. It is her intention "to hold the house for the benefit of Mr. Sauer until at least February 24, 1998," the date Pruss's mortgage loan on the residence from First Westroads Bank becomes payable in its entirety. However, her willingness to hold the house until February 24, 1998, is contingent upon Mr. Sauer continuing to pay the regular monthly mortgage payment to First Westroads Bank and the real estate taxes and insurance premiums on the property as they become due. If Mr. Sauer fails to make the payments or elects not to live in the house, it would be Pruss's "preference and desire" to sell the house and recover any remaining "investment" in the house, and turn the remaining funds over to Mr. Sauer or his bankruptcy estate. This latter statement, of course, acknowledges that the bankruptcy estate and Mr. Sauer may have an interest in the house she purchased.

Pruss purchased the residence from Household for the sum of $180,000.00, using $10,000.00 cash, $130,000.00 in loan proceeds, and $43,345.21 advanced by James Sauer (as discussed at length below). Subsequently,

Pruss paid off the $20,000.00 balance on another encumbrance on the property increasing her investment in the property to $156,654.79 ($20,000.00, plus $180,000.00 purchase price, minus $43,345.21 cash advanced by Mr. Sauer).

Neither James Sauer nor Pruss disclosed or sought court approval before completing the transaction. After the transaction was completed, Pruss filed the motions now considered and disclosed the transaction. On March 16, 1995, James Sauer, individually, and Pruss filed with this court a motion seeking authorization to enter into a trust agreement regarding the property, and for authority for Pruss to continue as attorney for debtor in possession. The motion proposes a trust agreement whereby Pruss would hold the residence in trust for Mr. Sauer, until Mr. Sauer is able to purchase the residence from Pruss, as trustee. In return, Mr. Sauer proposes to pay all taxes, mortgage payments, insurance and any other sums Pruss is required to advance on account of her mortgage. If the trust agreement is approved, the motion proposes that Mr. Sauer shall be beneficial owner of the property, holding all benefits, detriments, and tax attributes of ownership. If the trust agreement is not approved by the court, Pruss intends to treat the $43,345.21 advanced by the debtor as a payment on her allowed attorney fees and expenses,[1] declare herself as owner of the residence, treat the Mr. Sauer as a tenant, and to enter into a rental agreement with Mr. Sauer.

William and Janette Stock (the "Stocks") hold substantial allowed administrative claims in the J.A.S. Enterprises case. *See In re J.A.S. Enterprises, Inc.*, 180 B.R. 210 (Bankr.D.Neb.1995). Stocks object to the trust agreement for several reasons. First, they assert a conflict of interest will be created because Pruss, the attorney for the bankruptcy debtors, will become both a representative of the estates and a creditor of the

James Sauer estate. Second, if the trust agreement is approved, Pruss will hold an interest adverse to the bankruptcy estates, and will no longer be disinterested, as required by section 327. Further, the Stocks note that the transaction cannot be considered an arms length transaction because of the prior relationship of the attorney and client. The Stocks also assert that if Pruss and the debtor are attempting to settle a malpractice claim against Pruss, full disclosure should be made, and anything short of full disclosure could be a criminal violation under 18 U.S.C. § 152. Finally, the Stocks object to the use of bankruptcy estate funds from the J.A.S. Enterprises or James Sauer bankruptcy estates for the purchase of the residence.

Mr. Sauer's affidavit received in evidence at the April 24, 1995, hearing, identifies the source of the $43,345.21 he advanced to Pruss for use in purchasing the residence as "personal funds," approximately $35,000.00 from "earnings as a general contractor" and the balance from "rental revenues". The source and proprietary nature of these funds is contested by the United States Trustee and by the Stocks. The Stocks maintain that the monthly operating reports filed by Mr. Sauer indicate that these funds were, at least in part, transferred from the J.A.S. Enterprises bankruptcy estate, against which the Stocks have an administrative claim. The Stocks contend that there has been no showing that such a transfer was proper, authorized by the court, or in the best interests of the J.A.S. Enterprises bankruptcy estate.

The bankruptcy debtors, J.A.S. Enterprises and James Sauer, have been ordered to prepare and file with the court an accounting respecting transactions between the bankruptcy estates and transactions with Mr. Sauer. The source and nature of the funds advanced by Mr. Sauer for the purchase of the residence will be determined as a result of this accounting.[2] For purposes of the

---

1. The Bankruptcy court files in this case indicate that as of January 24, 1995, the court had allowed fees requested by Pruss in this case in the total amount of $63,559.08, of which $1,500.00 had been paid. See Fil. # 482. It appears that her unpaid allowed fees and expenses exceeded

the amount of the $43,345.21 advanced by Mr. Sauer for the house purchase.

2. At a hearing conducted before the bankruptcy court on November 1, 1995, the debtor, James A. Sauer, and counsel for the debtor, Marion Pruss, made clear that an accounting is currently being

matter now before the court, it is sufficient to note that there is a reasonable dispute as to whether the $43,345.21 contributed by Mr. Sauer towards the purchase of the residence constituted property of either or both bankruptcy estates. To the extent these funds constituted property of either the James Sauer or J.A.S. Enterprises bankruptcy estates, the estates, and the creditors of those estates, may have a claim against Pruss, Mr. Sauer, and the residence purchased, for disgorgement of funds.

## LAW

■ In a bankruptcy case, an attorney representing the debtor in possession must meet and observe the requirements of both federal bankruptcy law and applicable attorney ethical codes. For Pruss, these include Bankruptcy Code § 327, and the Nebraska Code of Professional Responsibility.

Bankruptcy Code § 327 governs employment of professional persons. The relevant provisions of Section 327 provide:

(a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327.

■ Under Bankruptcy Code § 327(a), an attorney may be disqualified from acting

as attorney for the debtor in possession if he or she is not disinterested, or if the attorney holds "an interest adverse to the estate." Although section 327 speaks of employment by the trustee, its proscriptions are equally applicable to professionals employed by debtor in possession by virtue of Bankruptcy Code § 1107(a). See *In re Diamond Mtg. Corp.*, 135 B.R. 78, 88 (Bankr.N.D.Ill.1990); *In re Cropper Co.*, 35 B.R. 625, 628 (Bankr. M.D.Ga.1983); *In re O'Connor*, 52 B.R. 892, 895 (Bankr.W.D.Okla.1985). This requirement and duty to remain a disinterested person is ongoing. A professional retained by the estate must remain disinterested throughout his or her entire tenure with the estate. *In re Diamond*, 135 B.R. at 89–90.

The definition of a disinterested person is set forth in Bankruptcy Code § 101(14):

(14) "disinterested person" means person that—

(A) is not a creditor, an equity security holder, or an insider;

\* \* \* \* \* \*

(E) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor. . . .

11 U.S.C. § 101(14).[3]

■ To qualify to act as an attorney for the debtor under section 327(a), two con-

---

prepared with respect to transactions during the pendency of this bankruptcy case (1) between J.A.S. Enterprises, Chapter 11 debtor, and James Sauer, Chapter 11 debtor; (2) between J.A.S. Enterprises, Chapter 11 debtor, and James Sauer, individually; and (3) as between James Sauer, Chapter 11 debtor, and James Sauer in his individual capacity. In addition, it was made clear by counsel, Ms. Pruss, that James Sauer was going to file an application for allowance of administrative claims in both of the bankruptcy cases. The court ordered that the debtor file the accountings within twenty-one (21) days of November 1, 1995. These accountings are necessary because numerous questions have been raised by the Office of the United States Trustee and by the Unsecured Creditors' Committee as to transactions between the two debtor estates *inter se*, and between the debtor estates and James Sauer in his individual capacity. Hence, part of

the accounting will involve a determination of whether or not the transfer of approximately $35,000.00 from J.A.S. estate to the Sauer estate was appropriate and whether and to what extent any of those funds were appropriately paid to Mr. Sauer from the James Sauer estate.

3. Courts which have interpreted this section in cases involving the issue of attorney disqualification have held that "an interest materially adverse to the interest of the estate or any class of creditors" means:

(1) to possess or assert any economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant; or (2) to possess a predisposition under circumstances that render such a bias against the estate.

**408**

ditions must be met. First, the attorney must hold no interest adverse to the bankruptcy estate, and, second, the attorney must be a disinterested person. *Cropper*, at 629. Although framed conjunctively, these conditions are applied disjunctively; failure to meet either results in disqualification. *See In re Pierce*, 809 F.2d 1356, 1362–63 (8th Cir.1987). These requirements are to be rigidly applied. *See* 2 LAWRENCE P. KING, COLLIER ON BANKRUPTCY ¶ 327.03 at 327–33 (15th ed. 1994), and cases cited therein. The section 101(14) definition of "disinterested" is broadly construed to disqualify anyone who might have the slightest degree of an interest or relationship with the debtor that would color the independent and impartial judgment required by the Code. *Id.* It has been held that a "disinterested" person should be divested of any scintilla of personal interest which might be reflected in their decisions concerning bankruptcy estate matters. *See In re Codesco, Inc.*, 18 B.R. 997, 999 (Bankr. S.D.N.Y.1982). And, the Code requires the same degree of disinterestedness on the part of an attorney employed by the debtor that is required of a trustee appointed under section 1104. *See* COLLIER at 327–36. The conflict of interest prohibition derived from section 327's requirement of disinterestedness is also more stringent than parallel ethical standards governing the conduct of attorneys. Congress has determined that strict standards are necessary in light of the unique nature of the bankruptcy process. *Cropper*, at 629.

> The basic principles underlying the conflict of interest prohibition take on an added dimension when applied to those representing a bankruptcy estate. Concepts of client consent and waiver become difficult to apply when the client, the estate, is a fiduciary for another group, the creditor body; and where the client's decisions with respect to the retention of professionals, including attorneys, are subject to judicial review after disclosure, notice, and hearing.... Thus, the conflict of interest rules are more strictly applied in the bankruptcy context than in other areas of the law, at least insofar as professionals retained by the estate are concerned. There

are two major reasons for this approach: first to maintain the integrity of the bankruptcy process, (citations omitted) and second, to assure that counsel devotes undivided loyalty to the client.

*Diamond*, 135 B.R. at 90 (citations omitted).

 Even the *potential* for conflict or the mere *appearance* of impropriety may constitute a disqualifying conflict of interest, *see Diamond*, at 91 (citing *In re Watson*, 94 B.R. 111, 116 (Bankr.S.D.Ohio 1988)), and professionals engaged in the conduct of a bankruptcy estate should be free of the *slightest* personal interest which *might* be reflected in their decisions concerning matters of the debtor estate or which *might* impair the high degree of impartiality and detached judgment expected of them. *See In re Philadelphia Athletic Club, Inc.*, 20 B.R. 328, 334 (E.D.Pa.1982) (citing 1 COLLIER BANKRUPTCY MANUAL § 101.13 (1981)). There should be no opportunity for the exercise of conflicting interests and no appearance that dual loyalty may exist. *Codesco*, at 999.

 In addition to its explicit requirements, two additional requirements have been implied under section 327(a): (1) the professional must continuously comply with the requirements of all appropriate codes of ethics; and (2) the professional must make ongoing, full and complete disclosure of all facts which might bear on their qualification for retention under section 327(a). For Pruss, this requires her to live up to the Nebraska Code of Professional Responsibility as adopted and construed by the Nebraska Supreme Court. Pruss states in her affidavit that, after reviewing the applicable Canons, she is content that she has not violated an ethical duty to her client. However, her personal view of the issue is not controlling. Section 327 requires an attorney to disclose potentially conflicting interests in order that the court and parties in interest may independently evaluate the facts. *See In re Lee*, 94 B.R. 172, 176 (Bankr.C.D.Cal.1988) (The decision of whether a connection with the debtor disqualifies the applicant is to be made by the court, not the attorney whose

*O'Connor*, at 896 (quoting *In re Roberts*, 46 B.R. 815, 816 (Bankr.D.Utah 1985)).

judgment may be clouded concerning the employment.). Pruss should have disclosed the transaction and sought court approval of the transaction before it was consummated.

Several provisions of the Nebraska Code of Professional Responsibility are pertinent to this discussion. Under DR 5–103 a lawyer is prohibited from acquiring a proprietary interest in the subject matter of litigation she is conducting for a client, or from advancing financial assistance to her client. Under DR 5–104, a lawyer is to limit business relations with a client and is prohibited from entering into a business transaction with a client where the attorney and client have differing interests. Under DR 5–105, a lawyer must withdraw from employment if the exercise of independent professional judgment on behalf of a client is or will likely be impaired. Under DR 7–102(A)(8), a lawyer is prohibited from knowingly engaging in illegal conduct or conduct that is contrary to a Disciplinary Rule. Under DR 6–102, a lawyer is prohibited from attempting to exonerate herself or limit her liability to a client for her personal malpractice. Under Canon 9, a lawyer is to avoid even the appearance of professional impropriety. NEB.CODE OF PROFESSIONAL RESPONSIBILITY (adopted by Neb. Supreme Court July 1990, as amended through Feb. 10, 1995).

Under United States Code Title 18, Federal Crimes and Criminal Procedure, a person who is an officer of the court and "knowingly purchases, directly or indirectly, any property of the estate of which the person is such an officer in a case under Title 11 ... shall be fined not more than $5,000.00 and shall forfeit the person's office, which shall thereupon become vacant." 18 U.S.C. § 154.

## *DISCUSSION*

I conclude that by entering into the described transaction, whereby she purchased former property of the bankruptcy estate, Pruss lost eligibility to serve as debtor's counsel because she is no longer disinterested. Her conduct, at a minimum, also creates an appearance of impropriety which reflects adversely upon the integrity of bankruptcy proceedings and raises serious questions as to her violation of the Nebraska Code of Professional Responsibility. The trust agreement does not resolve or cure these problems. Therefore, Pruss is disqualified from representing the debtor in this case and, in the companion Chapter 11 bankruptcy case, J.A.S. Enterprises (BK90–80899).

It is the aim of the Bankruptcy Code to prevent an attorney from being forced to choose between her own financial interests and the interests of a debtor in possession. *Cropper*, at 630. Pruss has intertwined her personal financial affairs with the financial interests of her clients, James Sauer, in his personal capacity, James Sauer as debtor in possession, and J.A.S. Enterprises, debtor in possession. Pruss is no longer a disinterested person under section 327 because she has a personal financial interest in the outcome of many issues now pending or expected to be presented to this court. Pruss purchased debtor's former residence. She is the record owner of the property. She has paid $30,-000.00 in cash, and is obligated on a mortgage loan of $130,000.00. To the extent that Mr. Sauer contributed funds towards the purchase, Pruss maintains alternative, inconsistent positions: First, she asserts that the funds contributed by Mr. Sauer were his own funds properly paid to Sauer from the bankruptcy estates for personal services. If that assertion fails, she asserts that the contribution of cash by Mr. Sauer constituted a payment on her allowed claim for attorney fees in the Sauer bankruptcy case. Pruss acknowledges that she may have to sell the home to obtain funds with which to pay her personal taxes. Mr. Sauer resides in the home, has contributed funds towards the purchase of the home, but the scope and nature of his interest in the home is not specified in any manner.

It is asserted that a portion of the funds used by Mr. Sauer to contribute towards the purchase of the home constituted property of the J.A.S. Enterprises bankruptcy estate which was transferred to the James Sauer bankruptcy case and subsequently transferred to Mr. Sauer, personally. These assertions about the source of funds raise a number of issues: Were funds of the bankruptcy estates wrongfully paid to Mr. Sauer?

Are the funds recoverable under section 549? If the funds are recoverable, may the funds be recovered from Pruss personally? Do the bankruptcy estates have an interest in the home? Can this court order that the home be sold? If it is sold, what happens if net sale proceeds of the home are not sufficient to pay off the mortgage and return the payments made by Pruss and return $43,345.21 to the estates? What are the transactions' tax consequences to Pruss?

█ There are a myriad of legal and factual issues to be resolved concerning this transaction. Some questions may be resolved without litigation, but it is quite likely that adjudication will be necessary. Since Pruss has a personal financial interest in resolution of these and other potential issues, she is no longer disinterested under section 327 and may no longer represent the debtor in possession, James Sauer. This disqualification and lack of disinterestedness of Pruss extends to the related J.A.S. Enterprises bankruptcy case because evidence suggests that the $43,345.21 which Mr. Sauer contributed towards the purchase of the house came from the J.A.S. Enterprises case. Pruss is therefore disqualified from representing both debtors in possession.

I have previously ruled that an attorney representing a Chapter 7 trustee may not purchase property of the bankruptcy estate. *In re Rahe*, 178 B.R. 801 (Bankr.D.Neb. 1995). In addition, if requisite intent is present, Pruss's purchase of the home violated federal criminal statutes. *See* 18 U.S.C. § 154.

As mentioned above, section 327 requires counsel for debtor in possession to comply with the applicable Code of Professional Responsibility. Pruss's purchase of the residence in this case appears to violate the Nebraska Code of Professional Responsibility. See DRs 5–103 [4], 5–104, and ECs 5–2 [5], and 5–3 [6]. First, the transaction involves Pruss's purchase of an asset which was formerly owned by her client, the bankruptcy estate, and she represented Mr. Sauer in his individual capacity in his attempt to personally purchase the home. The Nebraska Supreme Court has ruled that the Nebraska Code of Professional Responsibility is violated when assets of the bankruptcy estate are purchased by counsel for the bankruptcy estate. *State ex rel. Nebraska State Bar Ass'n v. Thor*, 237 Neb. 734, 467 N.W.2d 666 (1991).

Pruss argues that she did not violate any ethical prohibition, since she purchased the residence after the trust deed was foreclosed, so that at the time of her purchase of the home, it was not property of the bankruptcy estate, and that there was no plan to purchase or agreement to do so prior to time of the trust deed sale. Also, she purchased the residence from the lender, and not directly from the estate, in an arm's length transaction. However, Pruss's purchase of the residence, a former asset of the bankruptcy estate, still resulted in her ownership of an asset in which her client James Sauer, individually, holds an interest, and her bankruptcy estate clients *may* hold an interest. At minimum, this raises an appearance of impropriety under Canon 9.

---

**4.** All ethical code cites are to the Neb.Code of Professional Responsibility (adopted by Neb. Supreme Court July 1990, as amended through Feb. 10, 1995).

**5.** EC 5–2 states that after accepting employment, a lawyer should carefully refrain from acquiring a property right or assuming a position which would tend to make his judgment less protective of the interests of her client.

**6.** EC 5–3. The self-interest of a lawyer resulting from his ownership of property in which his client also has an interest or which may affect property of his client may interfere with the exercise of free judgment on behalf of his client. If such interference would occur with respect to

a prospective client, a lawyer should decline employment proffered by him. After accepting employment, a lawyer should not acquire property rights that would adversely affect his professional judgment in the representation of his client. Even if the property interests of a lawyer do not presently interfere with the exercise of his independent judgment, but the likelihood of interference can reasonably be foreseen by him, a lawyer should ... decline employment or withdraw unless the client consents [after full disclosure]. A lawyer should not seek to persuade his client to permit him to invest in an undertaking of his client nor make improper use of his professional relationship to influence his client to invest in an enterprise in which the lawyer is interested.

In addition, attorneys are generally directed to limit business relations with clients and to not render financial assistance to clients in connection with pending litigation. See DRs 5–103, 5–105. Pruss has provided financial assistance to James Sauer by purchasing the home and permitting him to reside there during the pendency of this case, and she is involved in a business transaction with James Sauer respecting the home in that each own or hold an interest in the home. Pruss represented Mr. Sauer personally in his unsuccessful attempt to purchase the home from Household. Her engagement in a financial transaction with him raises serious ethical concerns under DRs 5–103, 5–105 and EC 5–3. The residence was previously an asset of the pending bankruptcy case, and is now the subject of pending litigation in the bankruptcy case, i.e., litigation concerning the approval of the trust agreement. The home was also the subject of trust deed foreclosure proceedings and eviction proceedings. Pruss, while acting as attorney for the debtor in possession and Mr. Sauer personally, has acquired a proprietary interest in an asset which was the subject of a trust deed proceeding, an eviction proceeding, and the subject of disputes which should have been expected to arise in this bankruptcy case. Ms. Pruss's actions appear to violate the Nebraska Code of Professional Responsibility and, at minimum, create an appearance of impropriety.

Pruss is therefore disqualified from the representation of both James Sauer, as debtor in possession in this Chapter 11 case, and J.A.S. Enterprises, Inc., as Chapter 11 debtor in the companion case (BK90–80899). It is also quite apparent to me that Pruss should not represent Mr. Sauer in his individual capacity as they have conflicting financial interests in the home and have conflicting economic interests respecting various issues pending and anticipated to be pending in this bankruptcy case. Pruss may, of course, represent her own interest in the bankruptcy cases.

Pruss offers, alternatively, that if the court does not approve the trust agreement proposed by Mr. Sauer and Pruss, she intends to treat Mr. Sauer's contribution of $43,335.21 towards the purchase of the home as a payment of her allowed claim for attorney fees. The court disapproves such flexibility in addressing the facts of this case. I will determine, in separate proceedings, whether any property of the bankruptcy estates was improperly paid to Mr. Sauer and order appropriate relief. Pruss may not, however, elect to treat the funds as payment of attorney fees. Indeed, because she has lost her disinterestedness during the pendency of this case, her fees may be limited. See 11 U.S.C. § 328(c).

A separate order will be entered disqualifying Pruss from further representation of the debtor in possession in this case and in the companion Chapter 11 case of J.A.S. Enterprises, Inc. The trust agreement is not approved.