In re RABEX AMURU OF NORTH CAROLINA, INC., Debtor.

Bankruptcy No. B–95–13129C–11G.

United States Bankruptcy Court,
M.D. North Carolina,
Greensboro Division.

Feb. 8, 1996.

Ashley H. Story and James B. Angell, Raleigh, NC, for debtor.

Gill P. Beck, Greensboro, NC, for HUD.

*ORDER*

### WILLIAM L. STOCKS, Chief Judge.

This case came before the court on January 25, 1996, for hearing upon the Motion of Rabex of Japan, Ltd. to Alter or Amend Judgment or for Relief from Order Appointing Attorney for Debtor. Bonnie Kay Donahue and Nicolas P. Robinson appeared on behalf of Rabex of Japan, Ltd., C. Edwin Allman, III and R. Bradford Leggett appeared on behalf of Debtor and D. Anderson Carmen appeared on behalf of Amuru Japan, Ltd.

### MATTER BEFORE THE COURT

In the motion which is before the court, Rabex of Japan, Ltd. ("Rabex Japan") seeks an order removing C. Edwin Allman, III and the firm of Allman Spry Leggett & Crumpler (collectively referred to as "Allman Spry") as attorneys for the Debtor. In support of its motion, Rabex Japan asserts that the individuals who acted on behalf of the Debtor in employing Allman Spry were not authorized to do so and therefore the order they obtained for the employment of Allman Spry should be set aside. Rabex Japan further argues that Allman Spry was selected and paid by Amuru Japan, Ltd. ("Amuru Japan"), one of the petitioning creditors in the involuntary petition as well as a party to a dispute regarding the ownership of the stock of the Debtor, and that Allman Spry therefore is not disinterested as required by § 327 of the Bankruptcy Code.

Having considered the motion filed on behalf of Rabex Japan, the response filed on behalf of the Debtor and the portions of the official file relied upon by the parties in support of and in opposition to the motion, and having considered the arguments of counsel, the court makes the following findings of fact and conclusions of law:

### FINDINGS OF FACT

1. This case began with the filing of an involuntary petition for relief under Chapter 11 on November 7, 1995. The three petitioning creditors named in the petition are JASB Co., Amuru Japan and Fox Pines Condominium Association, Inc.

2. On November 13, 1995, an application for authority to employ attorney was filed by the Debtor in which the Debtor sought authority to employ Allman Spry as attorneys for the Debtor in this case. The application was accompanied by an affidavit from E. Edwin Allman, III which stated, among other things, that neither Mr. Allman nor his firm had any interest materially adverse to the interest of any of the creditors of the Debtor by reason of any other direct or indirect relationship to, connection with, or interest in the Debtor. The affidavit also stated that Mr. Allman did not represent any interest adverse to the Debtor or the estate in the matters upon which it was to be engaged. Attached to Mr. Allman's affidavit was a copy of the engagement letter regarding the retention of Mr. Allman and his firm by the Debtor. The engagement letter contained the following paragraph:

> The parent company of [the Debtor] has previously deposited $20,800 in our trust account as a retainer. Upon entry of an Order for Relief, we will withdraw from our trust account an amount sufficient to pay all time and expenses accrued to that point. The balance of the retainer will remain in our trust account and will be used as a source of payment of this firm's fees and expenses during the Chapter 11 case.

3. On November 22, 1995, an *ex parte* order was entered authorizing the debtor to employ Allman Spry as attorneys for the Debtor "on a general retainer to advise and direct it in the performance of its duties under Chapter 11 of Title 11 of the United States Code and to assist it generally in procedure, business operations, the formulation of a plan and disclosure statement, and other legal aspects in the administration of the estate which may arise therein."

4. On December 1, 1995, Rabex Japan filed the motion now before the court seeking relief from the order appointing Allman Spry as attorneys for the Debtor.

5. On December 21, 1995, Mr. Allman filed a document entitled "Disclosure of Compensation Pursuant to Bankruptcy Rule

2016." This document had a copy of the engagement letter between the Debtor and Allman Spry attached as an exhibit and contained the following paragraph:

"3. On October 27, 1995, Amuru Japan Limited, a Japanese corporation, caused to be paid to Allman Spry the sum of Twenty Thousand Eight Hundred & 00/100 Dollars ($20,800). Upon information and belief, Amuru Japan Limited was the source of the funds so paid. In addition, pursuant to the engagement letter, Amuru Japan Limited paid an additional Five Thousand & 00/100 [dollars] ($5,000) to Allman Spry on December 18, 1995 and Allman Spry expects that additional funds will be deposited into its's [sic] trust account to cover Allman Spry's fees and expenses rendered during the course of the Chapter 11 case."

6. On January 4, 1996, the Debtor filed its schedules in which it listed its creditors. The list of unsecured creditors contained in the schedules includes Amuru Japan as an unsecured creditor of the Debtor with an unsecured claim of $277,473.00.

7. Allman Spry has received two retainer payments for application to its fees as attorney for the Debtor in this case. The first retainer payment was paid prior to the filing of this case and was in the amount of $20,-800.00. The second retainer payment was in the amount of $5,000.00 and was paid on December 18, 1995. Both payments were paid to Allman Spry by Amuru Japan. Amuru Japan is a creditor of the debtor and signed the involuntary petition as a petitioning creditor and also claims to be the sole shareholder or, alternatively, the majority shareholder of the Debtor. This claim is disputed by Rabex Japan who contends that Amuru Japan holds no valid stock in the Debtor and that all of the validly issued stock in the Debtor is held by Rabex Japan.

8. At the time of the filing of the involuntary petition in this case, there was an ongoing dispute between Amuru Japan and Rabex Japan regarding the ownership of the common stock of the Debtor and litigation was under way in state court between Amuru Japan and Rabex Japan regarding the stock ownership and control of the Debtor. The Debtor also was named as a defendant in the pending state court action filed by Amuru Japan.

9. Prior to the filing of this case, Amuru Japan obtained an order in the state court case which, among other things, restrained Rabex Japan from taking any action, directly or indirectly (through its officers, directors, agents, servants, employees, and attorneys), as shareholder of the Debtor and further restrained Rabex Japan from communicating in any manner with any employee of the Debtor regarding the affairs of the Debtor or the operation of its golf resort.

ANALYSIS AND CONCLUSIONS
OF LAW

1. The first ground relied upon by Rabex Japan as a basis for its motion is the assertion that the persons who acted on behalf of the Debtor in employing Allman Spry were not authorized to do so. The dealings between the Debtor and Allman Spry were handled on behalf of the Debtor by Miyuki Knight who signed the engagement letter on behalf of the Debtor. Debtor has offered affidavits and other documentation tending to show that Ms. Knight was authorized to act on behalf of the Debtor regarding the employment of counsel. Although Rabex Japan argues that Ms. Knight was not authorized to do so, Rabex Japan failed to offer evidence at the hearing or point to evidence already in the record sufficient to contradict the showing made by Debtor. Therefore, the first ground for the motion fails for lack of evidentiary support at this preliminary stage of the controversy regarding the ownership and control of Debtor. The issues involved in the controversy are complex and will have to be resolved ultimately in a trial setting.

2. Rabex Japan next argues that Allman Spry is not disinterested as required by § 327 and should be removed because the firm was selected and paid by Amuru Japan. Although at this point it is not clear exactly how Allman Spry was selected, it is undisputed that Allman Spry received retainer payments from Amuru Japan and that Amuru Japan is a creditor of the Debtor, a petitioning creditor in the involuntary petition and a party to the stock ownership dispute. These

undisputed facts require that further analysis be made in order to determine whether Allman Spry may continue as attorneys for the Debtor.

3. Section 327(a) of the Bankruptcy Code permits trustees in bankruptcy and Chapter 11 debtors, with court approval, to employ attorneys. In order to be eligible for employment under this provision, an attorney must not hold an interest adverse to the estate and must be a disinterested person. In the present case there is no assertion that Allman Spry holds an interest adverse to the estate. Rather, the assertion is that the firm is not disinterested for purposes of § 327.

■ 4. The term "disinterested person" is defined in § 101(14) of the Bankruptcy Code. Under this definition, in order to qualify as "disinterested" an attorney must "not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor ... or for any other reason." § 101(14)(E). This definition imposes a flat, unconditional mandate that the attorney "not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders." The source or cause of any materially adverse interest is immaterial—if, *for any reason,* the attorney has an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders he or she may not serve as attorney for the Chapter 11 debtor.

5. The grounds for the assertion in the present case that Allman Spry is not disinterested for purposes of § 327(a) is the receipt of the two retainer payments from Amuru Japan, an entity that is a creditor, a signatory on the involuntary petition and a party to an ongoing dispute regarding the ownership of stock of the Debtor. The issue thus raised is whether Allman Spry has an "interest materially adverse" to the interest of the estate or the interest of any class of creditors or equity security holders as a result of having received the retainer payments.

■ 6. Unfortunately, the Bankruptcy Code contains no definition of the term "interest materially adverse" as that term is used in § 327. However, the cases establish that it is a term with broad parameters. It has been interpreted to encompass both actual and potential conflicts of interest. *See In re The Cropper Co.,* 35 B.R. 625, 631 (Bankr. M.D.Ga.1983) ("[e]ither prong of Section 327 [adverse interest or disinterested person] requires an attorney employed by a debtor in possession to be free of ... actual *and potential* conflicts of interest" (emphasis supplied)); *see also In re Glenn Elec. Sales Corp.,* 99 B.R. 596, 601 (D.N.J.1988) ("The bankruptcy laws prohibit not just actual conflict but also the *potential* for conflict which may be engendered by an attorney's representation of the debtor in possession.") (emphasis supplied).

■ 7. The concept of disinterestedness required of attorneys under § 327 also encompasses a requirement that an attorney's representation of the debtor in possession not create the appearance of conflict of interest or impropriety. "Thus, the bankruptcy rules in and of themselves incorporate considerations which are the equivalent of Canon 9's 'appearance of impropriety' standard." *Glenn Elec.,* 99 B.R. at 601; *see also In re Codesco, Inc.* 18 B.R. 997, 999 (Bankr. S.D.N.Y.1982) ("There is no question that the purpose of the incorporation of the disinterest requirement in 11 U.S.C. § 327 was to prevent even the appearance of a conflict irrespective of the integrity of the person or firm under consideration.").

■ 8. Whether there is an appearance of conflict of interest or appearance of impropriety such that an attorney is not disinterested within the meaning of § 327 is a case specific determination. It is a determination which depends upon the particular facts of each case in which the issue arises. The use of *per se* rules in this Circuit for evaluating disinterestedness is discouraged. *In re Harold & Williams Dev. Co.,* 977 F.2d 906, 909–10 (4th Cir.1992) ("Because the few absolute disqualifications Congress has established are carefully delineated and narrowly tailored, the courts must take care not to fashion *absolute* prohibitions beyond those legis-

latively mandated without some measure of assurance that the purposes of the Bankruptcy Code *always* will be served thereby."). The determination of disinterestedness therefore should be one in which the bankruptcy court examines all of the relevant facts presented in each case and decides the issue on a case-by-case basis rather than relying upon "bright-line rules that are not contained in the Bankruptcy Code." *In re Palumbo Family Ltd. Partnership,* 182 B.R. 447, 466 n. 29 (Bankr.E.D.Va.1995).

 9. The foregoing is the approach which the court will take in the present case. In doing so, the court rejects at the outset the notion of a *per se* rule under which an attorney would be deemed not disinterested and disqualified any time a retainer for the attorney is paid by a person or entity other than the debtor. *See In re Kelton Motors, Inc.,* 109 B.R. 641, 657 (Bankr.D.Vt.1989) ("We reject Creditors' invitation to adopt a per se rule against this disclosed arrangement for legal representation by payment from a third party payor-insider where there is no evidence of a fee guarantee or material creditor relationship between the payor-insider and corporate debtor/client."); *In re Missouri Mining, Inc.,* 186 B.R. 946 (Bankr. W.D.Mo.1995). Instead, disinterestedness in this context depends upon the identity and status of the payor, the relationship of the payor to the debtor and to other parties in interest and the circumstances surrounding the payment of the retainer.

10. The court next observes that in the present case there is no contention or evidence of ethical misconduct or wrongdoing on the part of Allman Spry. Nor is there any evidence that Allman Spry has rendered any advice or taken any action which was not in the best interest of the Debtor. In fact, counsel for the movant emphasized during oral argument that they do not question the integrity of Allman Spry.

11. Nevertheless, the facts of the present case are such that there is an appearance of conflict or impropriety such that Allman Spry must be deemed not disinterested as required under § 327. There are several factors which lead to this conclusion. First, Amuru Japan, the payor of the retainer pay-

ments, is a substantial creditor. The Debtor's schedules list Amuru Japan as having an undisputed unsecured claim in the amount of $277,473.00. This is the second largest unsecured claim listed in the schedules. With a claim of this magnitude, Amuru Japan has interests which are or may be directly adverse to those of the debtor. The payment of a retainer by a party having such interests creates at least the potential for a conflict of interest and an appearance of conflict of interest. *See In re Huntmar Beaumeade I Ltd. Partnership,* 127 B.R. 363 (Bankr. E.D.Va.1991); *In re Crimson Invs., N.V.,* 109 B.R. 397, 402 (Bankr.D.Ariz.1989); *In re Adam Furniture Indus., Inc.,* 158 B.R. 291 (Bankr.S.D.Ga.1993).

12. The next factor has to do with Amuru Japan being a direct party to this case. This case is an involuntary case. As the name denotes, an involuntary case is adversarial in nature and is filed by creditors to force the debtor to do something which the debtor is unwilling to do on its own. In this case, as a petitioning creditor, Amuru Japan is one of the parties on the opposite side of the involuntary case filed against the Debtor. There is a troubling inconsistency between the same party filing an involuntary case against the Debtor and also paying the attorney who is to represent the debtor in that same adversarial proceeding. This inconsistency also points toward the appearance of impropriety and conflict of interest.

13. Another factor leading to the conclusion that Allman Spry is not disinterested involves the ongoing, continuing nature of the payments by Amuru Japan. A substantial retainer in the amount of $20,800.00 was paid to Allman Spry by Amuru Japan when the firm was employed at the outset. The Disclosure of Compensation filed by Allman Spry states that Allman Spry "expects that additional funds will be deposited into its's [sic] trust account to cover Allman Spry's fees and expenses rendered during the course of the Chapter 11 case." The engagement of Allman Spry thus contemplates that Amuru Japan will continue to make payments during the pendency of the Chapter 11 case. In fact, an additional retainer payment was paid by Amuru Japan on or about De-

cember 18, 1995, in the amount of $5,000.00. The terms of the engagement of Allman Spry, together with the additional payment which already has been made during the pendency of this case, suggests an ongoing, guaranty-type of arrangement between Amuru Japan and Allman Spry. The acceptance of a guaranty from a creditor is a factor which strongly indicates the appearance of a conflict of interest if not an outright conflict. *See In re Senior G & A Operating Co.*, 97 B.R. 307, 311 (Bankr.W.D.La.1989) ("The guaranty of the fees of attorneys for the Debtor may raise a question as to whom the attorneys are actually representing. Counsel's duty of undivided loyalty runs to the debtor. That duty cannot be compromised by insiders who guaranty compensation.... By accepting a guaranty from an insider, a debtor's counsel may have created a potential conflict of interest.").

14. The appearance of impropriety and risk of conflict of interest is magnified in the present case as a result of the ongoing conflict between Amuru Japan and Rabex Japan regarding the ownership and control of the debtor. Clearly Amuru Japan has "an interest materially adverse" to Rabex Japan, an entity which claims to be an equity security holder and/or creditor. During the exclusivity period, the Debtor, through its counsel, will have the opportunity to shape the plan of reorganization that will be proposed and to determine the degree to which the plan will involve both Amuru Japan and Rabex Japan. The fact that the fees of Allman Spry are being paid by Amuru Japan creates the appearance that Allman Spry might have an interest materially adverse to Rabex Japan

and that Amuru Japan might have an advantage over Rabex Japan in the plan formulation process.

15. For the foregoing reasons, the court has concluded that there is an appearance of conflict of interest on the part of Allman Spry and that this appearance of conflict of interest is such that it requires that Allman Spry be regarded as not disinterested for purposes of § 327. In reaching this conclusion, the court is not unmindful of the difficulties which existed for the Debtor when this case was filed. At that time a foreclosure proceeding against virtually all of Debtor's assets was pending. The lender had taken possession of Debtor's assets and was operating the golf course and resort owned by Debtor. Undoubtedly these circumstances placed the Debtor in an untenable and difficult position as regards the employment of counsel.[1] In all likelihood the involvement of Amuru Japan with the employment of counsel in this case grew out of these difficulties and perhaps was regarded as a solution born of necessity or perceived necessity. Even so, there is a limit to what is permissible, even under the difficult circumstances faced by the Debtor, and that limit was exceeded in this case. Despite the good intentions of counsel for the Debtor and the utter lack of any misconduct or infidelity on the part of counsel, there is an appearance of conflict of interest in this case to a degree which is not permissible under § 327. Such an appearance of conflict, if countenanced in this case, would give rise to harmful and unnecessary questions and doubts regarding the administration of this case in particular,

---

1. In *In re Kelton Motors, Inc.*, 109 B.R. 641, 658 (Bankr.D.Vt.1989), the court listed some nonexclusive guidelines for dealing with the exigency of a situation of this type. The opinion suggests that the payment of a retainer by an insider might be approved if the court was affirmatively satisfied with the reasonableness of the arrangement, if it was negotiated in good faith and was necessary as a means of insuring the engagement of competent counsel and met the following conditions: (a) the arrangement must be fully disclosed to the debtor/client and the third party payor-insider; (b) the debtor must give express consent to the arrangement; (c) the third party payor-insider must retain independent legal counsel and must understand that the attorney's duty of undivided loyalty is owed exclusively to

the debtor/client; (d) the factual and legal relationships between the third party payor-insider, the debtor, their respective attorneys, and their contractual arrangement concerning the fees must be fully disclosed to the court at the outset of the debtor's bankruptcy representation; and (e) the debtor's attorney/applicant must demonstrate and represent to the court's satisfaction the absence of facts that would otherwise create non-disinterestedness, actual conflict or impermissible potential for a conflict of interest. Earlier portions of the opinion reflect that "evidence of a fee guarantee or material creditor relationship" on the part of the payor of the retainer would prevent the proposed attorney from satisfying this latter requirement. *Id.* at 657.

and regarding the bankruptcy process in general, which must be avoided assiduously.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the motion of Rabex Japan is granted to the extent that it seeks to remove Allman Spry as attorneys for the Debtor in this case and Allman Spry is hereby removed as attorneys for the Debtor.