**In re EZ LINKS GOLF, LLC, Debtor.**

**No. 04–28150 SBB.**

United States Bankruptcy Court,
D. Colorado.

Nov. 6, 2004.

John F. Young, Block, Markus & Williams, LLC, Denver, CO, for Debtor.

Kelly J. Sweeney, Office of the United States Trustee, Denver, CO, for United States Trustee.

## MEMORANDUM OPINION AND ORDER

SIDNEY B. BROOKS, Chief Judge.

The matter before the Court is the October 14, 2004 Amended Application to Employ Block Markus Williams, LLC Under 11 U.S.C. § 327(a) ("Amended Application") and the objection thereto filed by the United States Trustee ("UST"). A hearing was held on November 10, 2004, at which time the Court, having reviewed the file, heard argument and being advised in the premises denied the Application in a ruling from the bench. The Court informed the parties at the hearing that a formal order on the matter would be issued; accordingly, the Court makes the following findings of fact, conclusions of law and order.

## I. BACKGROUND

EZ Links Golf, LLC ("Debtor") is a sole member LLC whose member is EZ Links Golf, Inc. The Debtor was formed in 1999 to take over EZ Links Golf, Inc.'s system of providing internet access to golf tee time reservations on courses across the county along with the system for computa-

tion of golf handicaps for players on those courses.

The Debtor and EZ Links Golf, Inc. are co-obligors on a $1.1 million loan from Banco Panamericano. Banco Panamericano is owned by the Greenblatt Family Trust. The sole beneficiary of the Greenblatt Family Trust is Mr. Leon Greenblatt. Mr. Leon Greenblatt owns fifty per cent (50%) of the outstanding share of Loop Corporation which owns eighty percent (80%) of the outstanding shares of EZ Links Golf, Inc.

In September of 2002, all of the assets and business of the Debtor were transferred to EZ Links Golf, Inc. There was no consideration paid for the transfer and it does not appear that EZ Links Golf, Inc. repaid the outstanding obligations of the Debtor.

During the time that the Debtor operated, it incurred significant tax liability. Approximately $1.6 million is owed to the Internal Revenue Service and $91,000 is owed to the State of Illinois.

The Debtor filed a voluntary petition for Chapter 11 relief on August 20, 2004. The Debtor's initial Schedules did not disclose that EZ Links Golf, Inc., was a co-obligor on the Banco Panamericano loan. The Banco Panamericano obligation is also scheduled as a secured claim, however, the Debtor does not appear to have any remaining assets to secure the claim since the September 2002 transfer of all assets to EZ Links Golf, Inc.

The initial Statement of Financial Affairs had certain deficiencies. It did not list EZ Links Golf, Inc., as the sole member of the Debtor in response to Question 21. b. where it disclosed the name of its manager (admittedly, Question 21 as presently worded does not appear to require that information from LLCs as it address-

es identification of partners, officers and directors, partnership interests and shareholders holding over five percent (5%) of the shares; however, to the extent the Debtor chose to identify its manager under 21. b., it logically follows that it would disclose the interest of the members there). The Statement of Financial Affairs disclosed "EZ Links, Inc."[1] as a parent corporation for tax purposes in response to Question 24. One relevant, nondeficient disclosure was and in response to Question 9, where it disclosed that BMW received its retainer on June 29, 2004, almost eight weeks before the case was filed.

On September 23, 2004, over one month after the case commenced and four days before the 11 U.S.C. § 341 meeting of creditors, the original application to employ the firm of Block Markus Williams, LLC ("BMW"), was filed without any corresponding L.B.R. 202 notice. The original application to employ disclosed that BMW received a $25,000 security retainer from "EZ Links, Inc.," "an affiliate of the Debtor" and that any unused portion of the retainer would be returned to the Debtor and not its affiliate. The declaration attached to the application to employ disclosed that BMW had undertaken a detailed conflicts check of the Debtor's list of interested parties and significant creditors and represented that it had no current connection with those parties subject to certain exceptions disclosed. Those exceptions are that BMW represents Banco Panamericano and Leon Greenblatt "a person who may be an insider of the Debtor ..." as secured creditors in a bankruptcy case pending in the United States Bankruptcy Court for the Northern District of Illinois. BMW disclosed that estimated total billings on behalf of Banco Panamericano and

---

1. The entity is actually EZ Links Golf, Inc., not EZ Links, Inc.

Mr. Greenblatt are less than three percent (3%) of the total billings of BMW over the past two years; that the parties have waived any conflict or potential conflict, provided that BMW cannot represent a party seeking affirmative relief against Banco Panamericano or Mr. Greenblatt; and that BMW was not aware of any affirmative relief existing in favor of the Debtor against those parties. The declaration also contained the disclosures about the receipt of the retainer from EZ Links, Inc. similar to those in the original application.

At the Status and Scheduling Conference held on September 27, 2004, immediately following the meeting of creditors, the initial application to employ and declaration of counsel were addressed. At the conference, the Court was apprized of the intertwined and somewhat confusing relationships between the Debtor, EZ Links Golf, Inc., Banco Panamericano and Mr. Greenblatt, as well as the need to disclose BMW's ties to another creditor, Convergent Communications, Inc., whose confirmed bankruptcy case is still under the jurisdiction of this Court and BMW represents the Liquidating Trustee of its estate. Based upon the information before the Court, the Court found that the original declaration should be stricken as inadequate and that the Debtor was to "file an Amended Application . . . with a detailed and accurate declaration in support there of illustrating and defining the relationships between the law firm and the various entities involved in this proceeding." The Court also set a deadline for the Debtor to file amendments to the Statement of Financial Affairs and Schedules to likewise address certain deficiencies in disclosure.

At the September 27, 2004 Status and Scheduling Conference, counsel for the Debtor disclosed that the Debtor's plan concept was to set up a mechanism to repay the significant tax debt from voluntary or required contributions by persons in control of the Debtor at the time the taxes were incurred. Several individuals were identified as already expressing willingness to contribute and others were identified from whom payment would be sought. None of the allegedly responsible parties disclosed included EZ Links Golf, Inc.

On October 13, 2004, the Debtor filed an Amended Statement of Financial Affairs and Amended Schedules D, F and II. The relevant amendments to the Statement of Financial Affairs included disclosure that the Debtor's gross income for 2002 was $2,735,723 (no figure was disclosed in the original) and that EZ Links Golf, Inc., owned 100% of the membership interests. The relevant amendments to the Statement of Financial Affairs disclosed that EZ Links Golf, Inc., was a co-obligor with the Debtor to Banco Panamericano, hence EZ Links Golf, Inc., is the co-obligor of the Debtor on $1,101,197 of the $1,225,354.58 in general unsecured debt listed on Schedule F.

The originally filed Schedule E did not list any co-debtor on for any of the taxes listed and Schedule B did not list any potential claims against EZ Links Golf, Inc., related to the September 2002 transfer of assets. Neither of those Schedules was amended.

On October 14, 2004, the Debtor filed the Amended Application. Attached to the Amended Application was a Supplemental Declaration of counsel. The pertinent addition to the supplemental declaration related to Convergent Communications Inc. ("CCI"). CCI is listed as a creditor of the Debtor. BMW represented the Official Committee of Unsecured Creditors in the bankruptcy cases of CCI and Convergent Communication Services, Inc. ("CCSI"). The disclosure noted that following confirmation, the Committee was dissolved and

BMW was retained as counsel for CCI's liquidating trustee. BMW stated that it believed that any indebtedness owed was actually owed to CCSI, the subsidiary of CCI, whose estate is being administered by a different trustee and separate counsel. Also attached to the Amended Application was a corporate tree for "EZ Links" that provided a clear visual of the intertwined relationships of the Debtor, EZ Links Golf, Inc., Banco Panamericano and Mr. Greenblatt as they related to ownership and the $1.1 million obligation.

The L.B.R. 202 Notice for the Amended Application contained some additional information not disclosed elsewhere. Those disclosures were: that the terms of the fee arrangement and retainer were fully disclosed to the Debtor, it is understood and agreed by the Debtor, EZ Links Golf, Inc.[2] and BMW that BMW's duties of undivided loyalty are owed exclusively to the Debtor, BMW will not be representing EZ Links Golf, Inc., or any other principal of the Debtor and the Debtor gave its express consent to the fee arrangement.

The Amended Application with attachments and L.B.R. 202 Notice were served on all parties.

The written text of the Amended Application, Supplemental Declaration and L.B.R. 202 Notice failed to discuss that EZ Links Golf, Inc. is a co-obligor on the Banco Panamericano obligation, that EZ Links Golf, Inc., as the sole member of the Debtor is likely liable for the significant tax debt, and that the sole beneficiary of the trust that owns Banco Panamericano, Mr. Greenblatt, is the fifty percent (50%) shareholder of the majority shareholder of EZ Links Golf, Inc. Similarly, there is no discussion whether there may be claims against EZ Links Golf, Inc. for the transfer of the Debtor's assets without consider-

ation or whether EZ Links Golf, Inc., did obtain separate counsel in this matter.

At the November 10, 2004 hearing on the Amended Application, the Court heard argument from BMW and the UST, who was the only objecting party, and made inquiry into several of the more troubling aspects of the interrelationships between the parties. In particular, it became evident that neither the Debtor nor BMW had investigated whether the September 2002 transfer of assets constituted a fraudulent conveyance to EZ Links Golf, Inc., whether EZ Links Golf, Inc. had paid any of the unsecured non-insider creditors anything when the Debtor's business was transferred or whether EZ Links Golf, Inc., was making a profit on the operations that it took over from the Debtor.

## II. ISSUES

1. Was the disclosure by BMW adequate to determine whether BMW was disinterested?

2. Does BMW satisfy the disinterestedness requirement to allow it to serve as bankruptcy counsel for the Debtor?

## III. DISCUSSION

In order to be employed under 11 U.S.C. § 327(a), Debtor's counsel must show that they are disinterested and do not hold or represent an interest adverse to the estate. Moreover, the burden on counsel is to come forward with facts pertinent to eligibility and to make candid and complete disclosure. *E.g., Rome v. Braunstein,* 19 F.3d 54, 59 (1st Cir.1994) (citations omitted).

Discerning conflicts requires examining many factors. As the Supreme Court not-

---

**2.** It is only in the L.B.R. 202 Notice where BMW properly identifies EZ Links Golf, Inc., as having paid the retainer, versus EZ Links, Inc.

ed in a historic discussion on conflicts and fiduciary principles,

> The incidence of a particular conflict of interest can seldom be measured with any degree of certainty. The bankruptcy court need not speculate as to whether the result of the conflict was to delay action where speed was essential, to close the records of past transactions where publicity and investigation were needed, to compromise claims by inattention where vigilant assertion was necessary, or otherwise to dilute the undivided loyalty owed to those whom the claimant purported to represent.

*Woods v. City Nat'l Bank and Trust Co.,* 312 U.S. 262, 268, 61 S.Ct. 493, 497, 85 L.Ed. 820 (1941).

 There is no bright line test when debtor's proposed counsel has represented current creditors in the case. It involves the evaluation of various factors. *In re Sixth Avenue Car Care Center,* 81 B.R. 628 (Bankr.D.Colo.1988); *In re Amdura Corp.,* 121 B.R. 862 (Bankr.D.Colo. 1990). However, "activities and multiple representation that may be acceptable in commercial settings, particularly with the informed consent of clients, may not be acceptable in bankruptcy." *Id.,* at 866 citing to *In re Ginco, Inc.,* 105 B.R. 620 (D.Colo.1988); *In re Roberts,* 46 B.R. 815 (Bankr.D.Utah 1985), (*aff'd in part, rev'd and remanded in part*) 75 B.R. 402 (D.Utah 1987); *In re Kuykendahl Place Associates, Ltd.,* 112 B.R. 847 (Bankr. S.D.Tex.1989).

 As for the payment of a retainer by a third party, the majority of courts do not find that it is a *per se* rule for disqualification or to deem the professional not disinterested. *E.g., In re Rabex Amuru of North Carolina, Inc.,* 198 B.R. 892 (Bankr. M.D.N.C.1996); *In re Lotus Properties LP,* 200 B.R. 388 (Bankr.C.D.Cal.1996). "Instead, disinterestedness in this context depends upon the identity and status of the payor, the relationship of the payor to the debtor and to other parties in interest and the circumstances surrounding the payment of the retainer." *Rabex* at 896. The court in the *Lotus Properties* case adopted a five part test set forth in *In re Kelton,* 109 B.R. 641, 658 (Bankr.D.Vt. 1989). The test to serve as counsel who has received payments from the debtor's insiders requires:

(1) the arrangement must be fully disclosed to the debtor/client and the third party payor/insider;

(2) the debtor must expressly consent to the arrangement;

(3) the third party payor/insider must retain independent legal counsel and must understand that the attorney's duty of undivided loyalty is owed exclusively to the debtor/client;

(4) the factual and legal relationship between the third party payor/insider, the debtor, the respective attorneys, and their contractual arrangement concerning the fees, must be fully disclosed to the Court at the outset of the debtor's bankruptcy representation;

(5) the debtor's attorney/applicant must demonstrate and represent to the Court's satisfaction the absence of facts which would otherwise create non-disinterestedness, actual conflict, or impermissible potential for a conflict of interest.

*Id.* at 393.

 The Court adopts the test set forth in *Lotus Properties* and finds that the disclosure of BMW was inadequate and failed to satisfy the test. The Amended Application, Supplemental Declaration and L.B.R. 202 Notice failed to provide disclosure in a meaningful and effective manner to sufficiently allow parties in interest to

make an informed decision as to the propriety of BMW's representation of the Debtor. While there was disclosure of certain aspects of the relationships, it was not sufficient, in particular as it pertains to factors four and five above.

The Court further finds that BMW has a variety of important and consequential connections with parties who are integral to and somewhat inseparable from the Debtor. The relationships that BMW has with key parties surround the Debtor, and while the Court does not find that BMW represents an adverse interest, those relationships render BMW not disinterested. The Court's finding is reinforced by the failure of BMW to ask central questions in the case that impact the rights and opportunities of the Debtor regarding possible claims and the treatment of creditors when the Debtor transferred its assets to EZ Links Golf, Inc. Moreover, BMW's declaration that it cannot represent the Debtor to seek affirmative relief against Banco Panamericano and Mr. Greenblatt raises the inference that questions have not been asked as to whether such relief exists as against those two or through Loop Corporation, half of which is owned by Mr. Greenblatt. These multifaceted connections and representations of the Debtor, Banco Panamericano and Mr. Greenblatt under the circumstances of the case render BMW not disinterested.

In addition to the Debtor's co-obligation with EZ Links Golf, Inc. on the Banco Panamericano loan, EZ Links Golf, Inc., as the Debtor's sole member, is liable for the taxes owed by the Debtor. The Debtor's proposed plan and reason for filing for Chapter 11 relief is to develop a manner to pay the tax obligations. If the Debtor finds a mechanism to pay those tax obligations, that would place EZ Links Golf, Inc., in a better position to satisfy the Banco Panamericano loan for the benefit of Mr. Greenblatt. Meanwhile, it does not look like the Debtor's general unsecured non-insider creditors are likely to benefit.

Based upon the interrelationship of the parties and the payment of the retainer by EZ Links Golf, Inc., there are far too many areas where there will be questions as to whether BMW's action or inaction on behalf of the Debtor was driven by what is in the best interests of the estate and its creditors or by what would be in the best interest of Mr. Greenblatt, Banco Panamericano and EZ Links Golf, Inc. Such questions add to the conclusion that BMW is not found to be disinterested.

The timing of the ruling, two months and three weeks after the case was filed, is unfortunate because of the time and effort that BMW expended post-petition on behalf of the Debtor. The late filing of the deficient initial application highlights the critical need for counsel to provide complete, significant and meaningful disclosures at the very start of the case to allow the Court and parties in interest to raise and address any issues of disinterestedness at the outset.

## IV. CONCLUSION AND ORDER

Based upon the above and foregoing,

IT IS ORDERED that the Amended Application to employ BMW as counsel for the Debtor is DENIED.